## JOHNSON v. CADILLAC MOTOR CAR CO.

### (Circuit Court of Appeals, Second Circuit. November 12, 1919.)

### No. 20.

1. NEGLIGENCE ⬧119(7)—RECOVERY MUST BE ON NEGLIGENCE ALLEGED IN COMPLAINT.

Where a complaint alleges that, because of the negligent failure of the manufacturer of a motor car to properly inspect it, plaintiff, a purchaser from a dealer, was injured by the breaking of a wheel, there can be no recovery on the theory that the manufacturer was guilty of fraud in falsely representing that the wheels were of great strength.

2. NEGLIGENCE ⬧27—MANUFACTURER OF AUTOMOBILE LIABLE TO PURCHASER INJURED BY DEFECTIVE WHEEL.

The manufacturer of an automobile, who fails to use reasonable care in inspecting and testing the wheels, is liable to a purchaser, injured by the breaking of a defective wheel, though such purchaser bought from a dealer.

3. APPEAL AND ERROR ⬧1097(2)—DECISION ON FORMER WRIT OF ERROR MAY BE SET ASIDE, IF CLEARLY ERRONEOUS.

Notwithstanding the rules as to stare decisis, and that a decision of an appellate court becomes the law of the case on retrial, the Circuit Court of Appeals may, where former decision in the same case was clearly erroneous, and announced a wrong rule, which might well affect many persons adversely, reverse its earlier decision on writ of error after retrial; the rule as to the law of the case being largely one of convenience and policy.

Ward, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern District of New York.

Action by E. Wells Johnson against the Cadillac Motor Car Company. There was a judgment for defendant, and plaintiff brings error. Reversed.

Homer J. Borst, of Schenectady, N. Y. (Andrew J. Nellis, of Albany, N. Y., and Daisy L. Snook, of Amsterdam, N. Y., of counsel), for plaintiff in error.

William Van Dyke, of Detroit, Mich. (William L. Carpenter, of Detroit, Mich., of counsel), for defendant in error.

Before WARD, ROGERS, and MANTON, Circuit Judges.

ROGERS, Circuit Judge. This is an action against a corporation manufacturing automobiles, and which sold one of its cars to a retail dealer, who resold to the plaintiff. The car was defective, and while being used by plaintiff, broke down and overturned, seriously in-

juring the plaintiff, who brought this action to recover damages in the sum of $40,000.

The action was commenced in the Supreme Court of the state of New York in 1910, and was regularly removed to the United States Court for the Northern District of New York, where it was tried and judgment obtained in plaintiff's favor in the amount of $8,000. The judgment was brought to this court on writ of error covering some 500 pages. This court reversed the judgment upon the ground that, as no contractual relation existed between plaintiff and defendant, there could be no recovery. 221 Fed. 801, 137 C. C. A. 279, L. R. A. 1915E, 287, Ann. Cas. 1917E, 581.

The action was tried again before the court, and without a jury this time, and judgment was entered dismissing the complaint. The trial court found as a fact that the injuries were occasioned by the negligence of defendant, and that plaintiff was free from any contributory negligence, and that the damages amounted to $10,000. The dismissal of the complaint was based on the decision of this court upon the former writ of error, when we held that no contractual relation existed.

The plaintiff, in February, 1909, purchased from the Utica Motor Car Company a Cadillac touring car manufactured by the Cadillac Motor Car Company, a foreign corporation, organized under the laws of the state of Michigan, and having its principal office in Detroit. The Utica Motor Car Company is a dealer in motor cars and purchased to resell. It was the original vendee or immediate buyer, and plaintiff is the subvendee of the car.

The plaintiff, who was an experienced driver of automobiles, stored the automobile in question for some months. But, after some little previous use of it, he was on July 31, 1909, driving it on a main public highway and one in good condition at the time. The car was running between 12 and 15 miles an hour, when the front right wheel of the car suddenly and without any notice broke down, and the car turned over on the plaintiff, and, as the trial court found, "cut, mangled, and seriously and permanently injured him." The court also found that plaintiff had not recovered from the injuries which resulted from the accident and that he never would recover. The finding is that—

"His face and ear and eye are distorted, and the sight of his one eye is partially destroyed and so injured as to affect the sight of the other; plaintiff's shoulder and ribs were broken; his mouth and face was paralyzed; he cannot work his jaws at all, cannot smile, whistle, nor spit, nor control his lips at all; some of the nerves of his throat are paralyzed; he cannot speak clearly or distinctly; his right ear was torn out and the inner ear fractured. The plaintiff to the present time has been in part unable to do work or to look after his business to any extent; and he never will be able to look after his said business, or to conduct and manage any business. That prior to the time of the said accident, plaintiff was in good health, free from pain and suffering, and of the age of 44 years."

The court has also found as a fact that this automobile was manufactured, assembled, and put on the market by the defendant with a weak, inadequate, and defective wheel thereon, and that this defective condi-

tion was the proximate cause of the accident, and that the car, when defendant put it on the market, was dangerous to human life and unsafe for use, and that defendant ought to have known it, and, had it exercised ordinary care, would have known it.

The defendant did not manufacture the wheels, but purchased them of another company. The court found that defendant carelessly and negligently failed and omitted to use reasonable inspection and tests to discover the real condition and weakness of the wheels. There were other findings, some of which will be considered in a subsequent part of this opinion.

The amended complaint upon which the present action was tried is the same as that upon which the former action was tried. Nothing has been added to it, and nothing has been subtracted from it. The basis of the action is negligence.[1]

[1] The amended complaint does not contain any allegation of deceit or fraud, and those words are not to be found anywhere therein. There are no allegations that any representations were fraudulently or deceitfully made. The only allegation as to any representation is found in the following:

"It [defendant] had represented and declared to such ultimate purchaser, who relied thereon, that the machine was capable of enduring such use and operation, its wheels were the best obtainable, and equal to those of the highest priced cars, made from well-seasoned second-growth hickory, with steel hubs, the spokes special strength, wide spokes of ample dimensions to secure great strength."

---

[1] "That the defendant, well knowing the premises, and that the said motor vehicle was to be used by the purchaser thereof for the purposes hereinbefore alleged, and to carry passengers, and to run at a considerable speed, wrongfully, negligently, and carelessly put in spokes in the said wheel and in the hub thereof made out of dead, dozy, and rotten timber, which was unfit for that purpose, and was not strong, and was liable to break; that the defendant also wrongfully, negligently, and carelessly bored through five of the ten spokes in said wheel, and put bolts through the same, so that the strength of the same were almost entirely destroyed, and were wholly unable to stand the strain or load which the same was designed to stand and hold, and broke as hereinbefore alleged, and caused said accident, and all through the wrongful, negligent, and careless acts of the defendant.

"That the defendant further negligently painted the said spokes of the said wheel over, and the hub in which the same went, and varnished the same, and thereby concealed from the plaintiff and the purchaser of the said vehicle the condition of the said spokes, and the fact that the said spokes were nearly cut off by the said bolts and were defective, so that this plaintiff was entirely ignorant of the condition of the said wheel and the spokes and the hub thereof, and did not know that the same was constructed of said improper material and timber, and that the strength and efficiency of the same was weakened by the said bolts passing through the said spokes; that the said wheel was constructed negligently, without any notice to this plaintiff, and by reason thereof the said accident was caused, and this plaintiff injured as herein alleged, all through the said wrongful and negligent acts of the defendant, and all to the great damage of this plaintiff in the sum of $40,000. * * *"

And, after stating the representations the defendant was alleged to have made as to the wheels it used in its cars, the amended complaint concludes: "Nevertheless defendant carelessly and negligently omitted and failed to use reasonable inspection and tests to discover the real condition and weakness of said wheels and the several parts of each of them."

The complainant goes on to say that, if the wheels were not as represented, the car would be a deadly instrument. Then it alleges that defendant "carelessly and negligently omitted and failed to" use a reasonable inspection to discover the real condition of the wheels. There is no allegation that any representation was made with a fraudulent intent, and fraudulent intent is in most jurisdictions an essential element in· every actionable fraud.

As the cause of action stated in the pleadings is the defendant's negligence, and not defendant's fraud, whatever judgment is entered must conform to the cause of action stated in the plaintiff's pleadings. It must conform, not only to the proofs, but to the issues tendered by the pleadings.. When a complaint tenders one cause of action, judgment cannot go upon another and different cause of action. But, whatever the cause of action is, it cannot be denied that it is the identical cause of action that was here, and upon which this court passed, when the case was here before; and so far as the evidence or proof in the record is concerned that is in no respect different.

When the second trial was begun, it was stipulated that the testimony introduced by the plaintiff on the first trial should be considered in evidence as the plaintiff's case on the second trial, and that no other testimony should be introduced, except that the plaintiff might introduce the testimony of one additional witness, who was specified, to establish the same facts which that witness had testified to in another case. As matter of fact, however, no such testimony was introduced. The defendant was content to have the case disposed of upon the testimony presented by the plaintiff, and no testimony for defendant is found in the record.

The first time the case was tried by a jury, and the second time, as already stated, by the court. So that we have before us now certain findings of fact which were not in the record when the case was here before._ Some of these findings are without warrant, there being nothing in the record to support them; as for example:

"Nevertheless defendant carelessly and negligently failed and omitted to use reasonable inspection and tests to discover the real condition and weakness of the wheels on said machine as hereinafter described, and the several parts of each of them, and to conceal any defects in the spokes of the wheels on the said machine so purchased by the plaintiff it painted and varnished the same, so that the defective condition thereof and the spokes in said wheels were rotten and dozy could not be seen nor determined by the plaintiff or other purchaser by any reasonable inspection."

There is no evidence that the spokes were painted and varnished with intent to conceal their defective condition. That they were painted and varnished the evidence showed, but it did not show the intent. There is evidence showing that paint hardens the surface of hickory spokes and gives them a glossy appearance.

Counsel in the argument to this court put stress upon certain representations made by defendants in their catalogues and literature in reference to the wheels with which their cars are equipped, to the effect, as found by the trial judge, that such wheels were the best obtainable, and equal to those used on the highest priced cars; that they were of the artillery type, made from well-seasoned second-growth hickory,

with steel hubs and spokes of ample dimensions to insure great strength. And the judge has found the plaintiff purchased his car relying upon the representations. But this finding clearly cannot change the issue made by the pleadings, which we have already considered.

[2, 3] The question presented, and which this court decided on the former appeal, was whether defendant owed a duty of care to the plaintiff, who was not the immediate purchaser of the car, but a subvendee. This court then held that, as there was no contractual relation between plaintiff and defendant, there could be no recovery. This court, in an opinion written by Judge Ward and concurred in by Judge Lacombe (221 Fed. 801, 137 C. C. A. 279, L. R. A. 1915E, 287, Ann. Cas. 1917E, 581) stated the law governing the liability of manufacturers as follows:

"One who manufactures articles inherently dangerous—e. g., poisons, dynamite, gunpowder, torpedoes, bottles of water under gas pressure—is liable in tort to third parties which they injure, unless he prove that he has exercised reasonable care with reference to the article manufactured. * * * On the other hand, one who manufactures articles dangerous only if defectively made or installed—e. g., tables, chairs, pictures or mirrors hung on the walls, carriages, automobiles, and so on—is not liable to third parties for injuries caused by them, except in case of willful injury or fraud."

Judge Coxe filed a vigorous dissenting opinion, in the course of which he said:

"The principles of law invoked by the defendant had their origin many years ago, when such a delicately organized machine as the modern automobile was unknown. Rules applicable to stagecoaches and farm implements become archaic, when applied to a machine which is capable of running with safety at the rate of 50 miles an hour. I think the law as it exists to-day makes the manufacturer liable if he sells such a machine under a direct or implied warranty that he has made, or thoroughly inspected, every part of the machine, and it goes to pieces because of rotten material in one of its most vital parts, which the manufacturer never examined or tested in any way. If, however, the law be insufficient to provide a remedy for such negligence, it is time that the law should be changed. 'New occasions teach new duties;' situations never dreamed of 20 years ago are now of almost daily occurrence."

Since this court decided this case, when it was here before, the New York Court of Appeals has decided MacPherson v. Buick Motor Co., 217 N. Y. 382, 111 N. E. 1050, L. R. A. 1916F, 696, Ann. Cas. 1916C, 440 (1916). That court affirmed the court below in holding, in a case similar in its facts to the instant case, that the manufacturer of an automobile is not at liberty to put his product on the market without subjecting its component parts to ordinary and simple tests, and is not absolved from the duty of inspection because it buys the wheels from a reputable manufacturer. The court held the manufacturer's liability was not confined to the immediate purchaser, but extended to third persons not in contractual relations with it. In the course of its opinion the court, Judge Cardozo writing, said:

"Beyond all question, the nature of an automobile gives warning of probable danger if its construction is defective. This automobile was designed to go 50 miles an hour. Unless its wheels were sound and strong, injury was almost certain. It was as much a thing of danger as a defective engine for a railroad. The defendant knew the danger. It knew, also, that the car would be used

by persons other than the buyer. This was apparent from its size; there were seats for three persons. It was apparent, also, from the fact that the buyer was a dealer in cars, who bought to resell. The maker of this car supplied it for the use of purchasers from the dealer just as plainly as the contractor in Devlin v. Smith supplied the scaffold for use by the servants of the owner. The dealer was indeed the one person of whom it might be said with some approach to certainty that by him the car would not be used. Yet the defendant would have us say that he was the one person whom it was under a legal duty to protect. The law does not lead us to so inconsequent a conclusion. Precedents drawn from the days of travel by stagecoach do not fit the conditions of travel to-day. The principle that the danger must be imminent does not change, but the things subject to the principle do change. They are whatever the needs of life in a developing civilization require them to be."

In the Buick Case the court reviewed the authorities at great length, and reached its conclusion in a well-reasoned and discriminating opinion. Its conclusion upon the law is the reverse of that which this court reached in its former decision. The question we must now decide is whether we shall consider the matter as settled as between these parties, or whether we may still look into the matter to ascertain whether an erroneous doctrine was laid down in our former decision, which we are at liberty to correct, now that the same suit is here again on a second writ of error.

The answer to be given to the question is somewhat the more difficult because the court as now constituted differs in its membership from the court as it was constituted when the former opinion was rendered; two of the judges who were on the bench at that time having retired. The question now here is exactly the same question which Judges Lacombe, Coxe, and Ward passed upon.

It has been said that whatever is once established between the same parties in the same case continues to be the law of the case, whether correct on general principles or not, so long as the facts on which such decision was predicated continue to be the facts in the case. Gee v. Williamson, 1 Port. (Ala.) 313, 27 Am. Dec. 628. And it has been a maxim of the law that it is the duty of a judge to keep the scales of justice even and steady, and not let them waver with every new judge's opinion. Broom's Legal Maxims (7th Ed.) 147. His duty is to expound the law as he finds it has been decided, and not as he may wish it to be. In Parsons v. Gingell, 4 C. B. 560, Coltman, J., said:

"It is not our province to invent rules. It is our duty to discover and be guided by the rules that guided our predecessors."

In Thompson v. Maxwell Land Grant Co., 168 U. S. 451, 456, 18 Sup. Ct. 121, 123 (42 L. Ed. 539), Mr. Justice Brewer speaking for the court said:

"It is the settled law of this court, as of others, that whatever has been decided on one appeal or writ of error cannot be re-examined on a second appeal or writ of error brought in the same suit. The first decision has become the settled law of the case."

The court, long before this decision was rendered, had announced the same doctrine. In Himely v. Rose, 5 Cranch, 313, 3 L. Ed. 111 (1809), the Supreme Court reversed a decree of a Circuit Court, and the cause was remanded, with directions to enter a final decree con-

formable to the Supreme Court's opinion. From a decree then entered by the Circuit Court an appeal was taken. On the argument Chief Justice Marshall declared that "nothing is before this court but what is subsequent to the mandate," and he begins the opinion of the court by saying:

"A decree having been formerly rendered in this cause, the court is now to determine whether that decree has been executed according to its true intent and meaning."

In Browder v. McArthur, 7 Wheat. 58, 5 L. Ed. 397 (1822), the court denied an application for a rehearing upon the merits, made after the cause had been remitted to the court below to carry into effect the decree of the Supreme Court according to its mandate. The court declared the application came too late, and it stated that a subsequent appeal for supposed error in carrying into effect the mandate brought up only the proceedings subsequent to the mandate, and did not authorize an inquiry into the merits of the original decree. In Roberts v. Cooper, 20 How. 467, 15 L. Ed. 969 (1857), Mr. Justice Grier declared that the court could not "be compelled on a second writ of error in the same case to review our own decision on the first." And he added:

"To allow a second writ of error or appeal to a court of last resort on the same questions which were open to dispute on the first would lead to endless litigation. * * * There would be no end to a suit if every obstinate litigant could, by repeated appeals, compel a court to listen to criticisms on their opinions, or speculate of chances from changes in its members."

And see The Santa Maria, 10 Wheat. 431, 442, 6 L. Ed. 359; Corning v. Troy Iron & Nail Factory, 15 How. 451, 466, 14 L. Ed. 768; Sizer v. Many, 16 How. 98, 103, 14 L. Ed. 861; Ex parte Sibbald v. United States, 12 Pet. 488, 492, 9 L. Ed. 1167; Tyler v. Magwire, 17 Wall. 253, 284, 21 L. Ed. 576; Supervisors v. Kennicott, 94 U. S. 498, 24 L. Ed. 260; Clark v. Keith, 106 U. S. 464, 1 Sup. Ct. 568, 27 L. Ed. 302; Guarantee Co. of North America v. Phenix Ins. Co., 124 Fed. 170, 59 C. C. A. 376; The New York, 104 Fed. 561, 44 C. C. A. 38; United Press Association v. National Newspapers' Association, 254 Fed. 284, 165 C. C. A. 572.

In Ellison v. Georgia Railroad Co., 87 Ga. 691, 13 S. E. 809, Chief Justice Bleckley, speaking for the court, said: "Some courts live by correcting the errors of others and adhering to their own." And he declared that, when the court was satisfied that it had fallen into a great error "the maxim for a Supreme Court, supreme in the majesty of duty as well as in the majesty of power, is not stare decisis, but fiat justitia ruat cœlum."

In Missouri, Kansas & Texas Railway Co. v. Merrill, 65 Kan. 436, 70 Pac. 358, 59 L. R. A. 711, 93 Am. St. Rep. 287, the court on a second writ of error overruled its earlier opinion on the first writ of error, saying:

"Counsel for defendant in error have invoked the rule stare decisis, and insist that the former decision must govern on the second appeal. This would come to us with more force, if we were not now considering the same case, with the same parties before the court. If an erroneous decision has been made, it ought to be corrected speedily, especially when it can be done before

the litigation in which the error has been committed has terminated finally. We are fully satisfied that the rule of the former case is shattered by the pressing weight of opposing authority, and that reason is against it."

In Baker v. Lorillard, 4 N. Y. 257, 261 (1850), Judge Harris, speaking for the New York Court of Appeals, said:

"It [the court] may, and undoubtedly ought, when satisfied that either itself, or its predecessor, has fallen into a mistake, to overrule its own error. I go farther, and hold it to be the duty of every judge and every court to examine its own decisions, and the decisions of other courts, without fear, and to revise them without reluctance. But when a question has been well considered and deliberately determined, whatever might have been the views of the court before which the question is again brought, had it been res nova, it is not at liberty to disturb or unsettle such decision, unless impelled by 'the most cogent reasons.' 'I cannot legislate,' said Lord Kenyon, 'but by my industry I can discover what my predecessors have done, and I will tread in their footsteps.'"

In Cluff v. Day, 141 N. Y. 580, 36 N. E. 182 (1894), the court, after expressing the opinion that to permit the parties to an action to reopen a discussion on the law or the facts once deliberately determined by the court of last resort on a subsequent appeal in the same case on a suggestion of error in the former decision would encourage litigation and diminish respect for judicial tribunals, went on to say:

"There is no iron rule which precludes a court from correcting a manifest error in its former judgment, or which requires it to adhere to an unsound declaration of the law. It may, for cogent reasons, reverse or qualify a prior decision, even in the same case. But the cases in which this will be done are exceptional, and the power should be sparingly exercised. Where by inadvertence a settled principle of law is supposed to have been overlooked, or a rule of property violated, the court affords by its rules an opportunity to have its attention again called to the matter before final judgment is entered. If the party against whom the judgment is rendered omits to avail himself of this opportunity, or if, having applied for a reargument, the application is denied, and the case goes to a new trial on the law as declared, the circumstances must be very unusual which would justify the court in reversing its decision on a second appeal in the same case and upon the same facts. The decision is a precedent upon the point of law involved which the court may or may not follow in cases subsequently arising, but in the particular case it is 'more than authority—it is a final adjudication' between the parties."

The fact that the action is the same action, and the litigation has not yet terminated, and the further fact that the original error, if error was committed, was the error of a divided and not a unanimous court, are circumstances which are entitled to consideration.

There are other cases, some of them cited below, in which the courts have declined on a second appeal or writ of error to be bound by a decision rendered upon the first appeal, and have declared that the rule is not inexorable and without exception that a decision on the first appeal is in all cases to be adhered to. Bomar v. Parker, 68 Tex. 435, 4 S. W. 599; Bird v. Sellers, 122 Mo. 23, 26 S. W. 668; Chambers v. Smith, 30 Mo. 156, 158; Barton v. Thompson, 56 Iowa, 571, 9 N. W. 899, 41 Am. Rep. 119.

In 2 Van Fleet's Former Adjudication, § 664, the doctrine is stated as follows:

"If a cause is reversed in a higher court, the lower one is bound to proceed in accordance with the opinion sent down. The parties are compelled to re-try

the case on the new rules laid down, and to shape their respective causes of action or defense accordingly. Having done so, and in many cases having irretrievably changed their positions, it would work injustice to overturn these rules on a second appeal, and these again on a third, and so on ad infinitum. The suit might never end. Besides, it would be very undignified, and tend to bring the courts into merited disrespect, if the lower court should be compelled to retrace its steps on one appeal, and then to trace them back again on a second, and so on. Hence, with a few exceptions, it is a rule that a matter decided on appeal becomes in effect res judicata in that cause; or, as it is frequently expressed, it becomes the 'law of the case' in all its subsequent proceedings. * * * The rule under consideration is not a cast-iron one, nor strictly one of res judicata, but simply one of expediency, which is not to be lightly disregarded."

The writer then quotes the extract, already quoted from the New York Court of Appeals, that the rule is not an iron rule which precludes the court from correcting a manifest error, or which requires the court to adhere to an unsound statement of the law, and declares his approval of the statement.

In Wells on Res Adjudicata and Stare Decisis, § 624, the author, referring to the doctrine of stare decisis, declares that the rule must not be so rigidly pressed as to shield error needlessly, adding:

"And although prior decisions are not lightly to be departed from, yet any error may be corrected when no substantial injury is to be expected from the change, or when the evils of adherence are manifestly greater than those of departure. It must, of course, be clear that there is an error, and, as we have seen, it is not sufficient that a present court would have decided the matter differently, if it were res integra. But where this is clear, and a plain rule of law is manifestly violated, and especially if the rule established is mischievous, rather than beneficial, to the community at large, in its practical operations, or to a particular class of the community, as, for example, the holders of commercial paper, it should be abrogated without delay."

We recognize the full force and effect of the doctrine of stare decisis, and the general rule that on a second appeal matters disposed of on the first appeal ordinarily will not be again considered. It is, like the rule of res adjudicata, not a mere rule of practice inherited from a more technical time than ours. It is a rule "of public policy and of private peace," and is to be cordially regarded and followed in all proper cases. Hart Steel Co. v. Railroad Supply Co., 244 U. S. 294, 298, 37 Sup. Ct. 506, 61 L. Ed. 1148. But the rule is not an inexorable one, and should not be adhered to in a case in which the court has committed an error which results in injustice, and at the same time lays down a principle of law for future guidance which is unsound and contrary to the interests of society. We are satisfied that the present case falls under the exception to which we have referred. We shall not consider at length the reasons which have satisfied us that a serious mistake was make in the first decision. The reasons may be found in the opinion in the Buick Case, to which we have already referred, and which render it unnecessary to traverse the ground anew. We cannot believe that the liability of a manufacturer of automobiles has any analogy to the liability of a manufacturer of "tables, chairs, pictures or mirrors hung on walls." The analogy is rather that of a manufacturer of unwholesome food or of a poisonous drug. It is every bit as dangerous to put upon the market an automobile with rot-

ten spokes as it is to send out to the trade rotten foodstuffs. The liability of a manufacturer of food products was considered by this court at length in Ketterer v. Armour & Co., 247 Fed. 921, 160 C. C. A. 111, L. R. A. 1918D, 798 (1917). In that case we laid down the rule that one who puts on the market an imminently dangerous article owes a public duty to all who may use it to exercise care in proportion to the peril involved, and we declared that the liability does not grow out of contract, but out of the duty which the law imposes to use due care in doing acts which in their nature are dangerous to the lives of others.

The judgment is reversed.

WARD, Circuit Judge (dissenting). The opinion of the court concedes that the record on this appeal is the same as that on the former appeal. If the question then decided were raised between different parties, we should be affected only by the rule of stare decisis, and might overrule our former decision on the law; but between the same parties our former decision makes the law of the case, and is in this respect res adjudicata. I refer, among many other opinions of the Supreme Court, to Supervisors v. Kennicott, 94 U. S. 498, 24 L. Ed. 260; Clark v. Keith, 106 U. S. 464, 1 Sup. Ct. 568, 27 L. Ed. 302; Thompson v. Maxwell, 168 U. S. 451, 18 Sup. Ct. 121, 42 L. Ed. 539; We have so understood the law in this circuit (Development Co. v. King, 170 Fed. 923, 96 C. C. A. 139), and it has been so declared in the following Circuit Courts of Appeals: Fourth Circuit, Linkous v. Virginia Ry. Co., 242 Fed. 916, 155 C. C. A. 504; Fifth Circuit, Woodruff v. Yazoo Co., 222 Fed. 30, 137 C. C. A. 567; McClellan v. Rose, 222 Fed. 67, 137 C. C. A. 519, certiorari refused 241 U. S. 668, 36 Sup. Ct. 552, 60 L. Ed. 1229; Seventh Circuit, Standard Co. v. Leslie, 118 Fed. 557, 55 C. C. A. 323; Eighth Circuit, United Press Association v. National Association, 254 Fed. 284, 165 C. C. A. 572; Ninth Circuit, Matthews v. Bank, 100 Fed. 393, 40 C. C. A. 444; National Bank v. U. S., 224 Fed. 679, 140 C. C. A. 219.

I think the opinion of the court is a departure from a wise and salutary rule, which requires us to affirm the final judgment in this case, and therefore dissent.