**CHEROKEE NATION OF OKLAHOMA,**
Plaintiff,

v.

**MUSKOGEE CITY–COUNTY PORT
AUTHORITY, Defendant.**

No. 81–318–C.

United States District Court,
E.D. Oklahoma.

Feb. 8, 1983.

Paul M. Niebell, Washington, D.C., Michael S. Yaroschuk, Quechee, Vt., Earl Boyd Pierce, Fort Gibson, Okl., Andrew Wilcoxen, Muskogee, Okl., for plaintiff.

Mike Norman, Jon Tom Staton, Muskogee, Okl., Anthony G. Kaprelos, Tulsa, Okl., for defendant.

**AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

SEAY, Chief Judge.

Both the plaintiff and the defendant have moved the court to grant partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56(c) summary judgment may be "rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Both the plaintiff and defendant

agree that there is no genuine issue of material fact. It is undisputed that the defendant has constructed a wharf, cargo pier, and docking facility in the Arkansas River where it flows through Muskogee, Oklahoma. At issue before the court is the right of the defendant to construct wharves and piers in the Arkansas River without receiving permission from the plaintiff Cherokee Nation of Oklahoma. Therefore the court finds that partial summary judgment as to the issue of liability is appropriate under Rule 56(c).

Plaintiff has moved the court to grant it partial summary judgment on the basis that the plaintiff Cherokee Nation is the present owner of the bed and banks of the Arkansas River, that its title was confirmed in *Choctaw Nation v. State of Oklahoma,* 397 U.S. 620, 90 S.Ct. 1328, 25 L.Ed.2d 615 (1969), and that under the doctrines of *stare decisis* and *res judicata* this court should affirm its title and grant judgment as to liability of the defendant for trespass.

Defendant has moved the court to grant it summary judgment, and contends that it holds title to the riverbed adjoining its riparian land by conveyances traceable in the chain of title to the original Indian allottee of the land. Defendant contends that under established rules of property law, title to the riverbed passed to the riparian allottee when the land was originally allotted from the plaintiff Cherokee Nation. Because defendant claims title to the riverbed, it denies liability to plaintiff for trespass. Further, defendant asserts a right to construct wharves and piers by virtue of a navigational easement.

The question of ownership of the beds of the Arkansas River has been previously litigated in *Cherokee Nation v. State of Oklahoma,* 402 F.2d 739 (10th Cir.1968), *rev'd* and *rem'd sub nom Choctaw Nation v. State of Oklahoma,* 397 U.S. 620, 90 S.Ct. 1328, 25 L.Ed.2d 615 (1969), *reh'g den'd,* 398 U.S. 945, 90 S.Ct. 1834, 26 L.Ed.2d 285 (1970), on remand *Cherokee Nation v. State of Oklahoma,* 461 F.2d 674 (10th Cir.1972). Both the district court and the Tenth Circuit Court of Appeals had found that title to the riverbed belonged to the State of Oklahoma. However the United States Supreme Court found that title to the riverbed in the location which is involved in the present action belonged to the Cherokee Nation, and reversed and remanded. The district court then cancelled the outstanding mineral leases granted by the State of Oklahoma as lessor of the riverbed, and required State of Oklahoma to pay all lease rentals, bonuses, and royalty payments it had received from the riverbed into court. On appeal the State of Oklahoma and mineral leasees contended that the Supreme Court had not decided present title to the riverbed, but only the question of whether the title had originally been conveyed by the United States to the Cherokee Nation in the treaties and grants of 1830 and 1835. The Tenth Circuit addressed the defendant's contention as follows:

Present ownership has been at stake since the inception of the suit. The Cherokees sued for an accounting for money received under the Oklahoma leases, for future rentals or royalties, and for an injunction against interference with the use of the bed. Without present ownership, they could not be entitled to the relief sought. Oklahoma and its lessees denied the claims of the Indians. The fact that the arguments in the court of appeals and in the Supreme Court centered around the construction and effect of grants and treaties did not remove the question of present ownership. Unless present ownership was at stake, the opinions of both the court of appeals and the Supreme Court were futile, academic exercises. If the Indians had divested themselves of ownership, a determination of past ownership was valueless so far as the presented issues were concerned. Without a claim of present ownership, there was no case or controversy within the meaning of Art. III, § 2, of the United States Constitution. Federal courts decide only cases and controversies, *Muskrat v. United States,* 219 U.S. 346, 361, 31 S.Ct. 250, [255] 55 L.Ed. 246. The Supreme Court does not decide "abstract, hypothetical or contingent questions",

*Thorpe v. Housing Authority of the City of Durham,* 393 U.S. 268, 284, 89 S.Ct. 518, [527] 21 L.Ed.2nd 474.

A fair reading of the opinions, majority, concurring, and dissenting, of the Supreme Court requires the conclusion that the Supreme Court decided present ownership. See 397 U.S. at 621, 638–639, and 643, 90 S.Ct. 1328, at 1329, 1338, and 1340. The mandate to the district court was for further proceedings consistent with the Supreme Court decision. The opinion of the Court may be consulted to ascertain the intent of the mandate. *In re Sanford Fork and Tool Company,* 160 U.S. 247, 256, 16 S.Ct. 291, [293] 40 L.Ed. 414. The Supreme Court decision is the law of the case. *Banco Nacional de Cuba v. Farr,* 2 Cir., 383 F.2d 166, 177–178 and cases there cited, cert. denied 390 U.S. 956, 88 S.Ct. 1038, 19 L.Ed. 2nd 1151. The rule that a lower court must follow the decision of a higher court at an earlier stage of the case applies to everything decided "either expressly or by necessary implication", *Munro v. Post,* 2 Cir., 102 F.2d 686, 688; see also *The Santa Maria,* 10 Wheat. 431, 442–445, 23 U.S. 431, [442–445] 6 L.Ed. 359, and *Briggs v. Pennsylvania Railroad Co.,* 334 U.S. 304, 306, 68 S.Ct. 1039, [1040] 92 L.Ed. 1403. We believe that the question of ownership, both past and present, was decided in favor of the Indians by the Supreme Court and may not now be relitigated.

 The doctrine of *stare decisis* requires this court to give precedential effect to prior decisions of the United States Supreme Court and the Court of Appeals for the Tenth Circuit. Therefore, this court holds that present title to the Arkansas River as it flows through Muskogee is held by the plaintiff Cherokee Nation of Oklahoma.

The defendant Muskogee City-County Port Authority also contends in support of its cross motion for partial summary judgment that it has a right to build wharves and piers in the Arkansas River because it is a riparian landowner. Plaintiff contends that riparian rights cannot apply to a privately owned navigable river.

 It is well settled that in the absence of a controlling local law otherwise limiting the rights of a riparian owner upon a navigable river, he has a property right, incident to his ownership of the bank, of access from the front of his land to the navigable part of the stream, and when not forbidden by public law may construct landings, wharves, or piers for this purpose, *United States v. River Rouge Co.,* 269 U.S. 411, 418, 46 S.Ct. 144, 146, 70 L.Ed. 339 (1926). In accord, *United States v. Rands,* 389 U.S. 121, 126, 88 S.Ct. 265, 268, 19 L.Ed.2d 329 (1967); *United States v. Chandler-Dunbar Co.,* 229 U.S. 53, 63, 33 S.Ct. 667, 672, 57 L.Ed. 1063 (1913); *Dutton v. Strong,* 1 Black 23, 17 L.Ed. 29 (1861). These riparian rights are created by state law rather than federal law, and may vary from state to state, *Bonelli Cattle Co. v. Arizona,* 414 U.S. 313, 319, 94 S.Ct. 517, 522, 38 L.Ed.2d 526 (1973); *United States v. Rands, supra; Arkansas v. Tennessee,* 246 U.S. 158, 176, 38 S.Ct. 301, 305, 62 L.Ed. 638 (1918); *St. Anthony Falls Water Power Co. v. Water Commissioners,* 168 U.S. 349, 18 S.Ct. 157, 42 L.Ed. 497 (1897); and *Shively v. Bowlby,* 152 U.S. 1, 14 S.Ct. 548, 38 L.Ed. 331 (1894). The Supreme Court of Oklahoma approved use of county funds to buy riparian land in order to construct wharves and piers in the Arkansas River at the Port of Catoosa in *Sublett v. City of Tulsa,* 405 P.2d 185 (Okl.1965). Therefore, Oklahoma appears to follow the majority rule which gives a riparian owner the right to build wharves and piers in the shallow water of the shore of a navigable river.

Since the riparian right which defendant relies on is created by state law, the question which must be asked is whether it is within the power of the State of Oklahoma to grant riparian rights on a navigable river which it does not own. This question is a difficult one, as the Arkansas River is the only navigable river which the United States Supreme Court has found to be owned by an entity other than a state, *Montana v. United States,* 450 U.S. 544, 555, 101 S.Ct. 1245, 1253, 67 L.Ed.2d 493 (1981).

■ The power of a state to grant riparian rights can be traced back to English common law as it existed before the American Revolution. The King held title and dominion of the sea, the rivers, and all the lands below the high water mark, and because their natural use was for highways of navigation and commerce, their dominion was vested in the King as the representative of the nation and for the public benefit, *Shively v. Bowlby, supra,* 152 U.S. at 11, 14 S.Ct. at 551. The owner of land fronting on a navigable river had a right of access from his land to the river. That right was not title in the soil, but a right of access only, analogous to the right of a landowner along a public highway. Upon the American Revolution all rights of the Crown and of Parliament vested in the several states, subject to the rights surrendered to the national government by the Constitution of the United States, *Shively v. Bowlby, supra,* at 15, 14 S.Ct. at 553; *Johnson v. McIntosh,* 8 Wheat. 543, 595, 5 L.Ed. 681. As new states were forged out of the federal territories after the formation of the Union, they were admitted with the same rights, sovereignty, and jurisdiction as the original states possessed within their respective borders, *Bonelli Cattle Co. v. Arizona, supra,* 414 U.S. at 318, 94 S.Ct. at 522. Thus, all states of the Union hold title to the navigable rivers located within their borders (with the single exception of the Arkansas as previously noted). The United States Supreme Court left it to the states to establish for themselves "such rules of property as they deem expedient with respect to the navigable waters within their borders and the riparian lands adjacent to them," *Arkansas v. Tennessee, supra* 246 U.S. at 176, 38 S.Ct. at 305. A careful reading of those cases which discuss the state's power to grant riparian rights reveals that the state's power arises from their ownership of the riverbeds, *Bonelli Cattle Co. v. Arizona, supra,* 414 U.S. at 319, 94 S.Ct. at 522; *St. Anthony Falls Water Power Co. v. Water Commissioners, supra,* 168 U.S. at 359, 18 S.Ct. at 161 (1897); *Shively v. Bowlby, supra;* and *Hardin v. Jordan,* 140 U.S. 371, 11 S.Ct. 808, 35 L.Ed. 428 (1891). Because the State of Oklahoma does not own the bed of the Arkansas River as it flows through Muskogee, it is without power to grant riparian rights to the defendant Muskogee City-County Port Authority, and the defense to liability relied upon by the defendant necessarily fails.

Based on the foregoing discussion, the plaintiff's Motion for Partial Summary Judgment as to liability is hereby granted and defendant's Motion for Partial Summary Judgment is hereby denied.

The court is of the opinion that this order involves a controlling question of law as to which there is a substantial ground for difference of opinion, since the question of whether riparian rights apply to a privately owned river has not been previously decided. The court believes that an immediate appeal from this order may materially advance the termination of the litigation. Therefore the action is hereby stayed during the pendency of its appeal.