GENESEE COUNTY PATRONS FIRE RELIEF ASSOCIATION, Respondent, *v.* L. SONNEBORN SONS, INC., Appellant, Impleaded with Another.

THE CO-OPERATIVE FIRE INSURANCE COMPANY OF WYOMING AND GENESEE COUNTIES, Respondent, *v.* L. SONNEBORN SONS, INC., Appellant, Impleaded with Another.

(Argued January 19, 1934; decided February 27, 1934.)

*A. S. Gilbert* for appellant. The appellant was not bound to foresee the use to which the waterproofing preparation was put, or the consequences which followed. (*MacPherson* v. *Buick Motor Co.*, 217 N. Y. 382; *Schfranek* v. *Moore & Co.*, 54 Fed. Rep. [2d] 76; *Lane* v. *City of Buffalo*, 232 App. Div. 334; *Longacre* v. *Yonkers R. R. Co.*, 191 App. Div. 770; *Ryan* v. *Cortland Carriage Goods Co.*, 133 App. Div. 467; *Polemenakos* v. *Cohn*, 234 App. Div. 563; 260 N. Y. 524; *Hubbell* v. *City of Yonkers*, 104 N. Y. 434.) In no event is property damage recoverable. (*P. G. Poultry Farm, Inc.*, v. *Newtown B. P. Mfg. Co.*, 248 N. Y. 293; *Windram Mfg. Co.* v. *Boston Blacking Co.*, 239 Mass. 123; *Lukens*

v. *Freiund*, 27 Kan. 664.) The failure of appellant to label the package with a warning against use near an open flame was not the proximate cause of the damage to respondents. (*Laidlaw* v. *Sage*, 158 N. Y. 73; *Perry* v. *Rochester Lime Co.*, 219 N. Y. 60; *Leeds* v. *New York Tel. Co.*, 178 N. Y. 118; *Hall* v. *New York Tel. Co.*, 214 N. Y. 49; *Flaherty* v. *Metro Stations, Inc.*, 202 App. Div. 583; 235 N. Y. 605; *Beickert* v. *G. M. Laboratories*, 242 N. Y. 168; *Southern Pacific Co.* v. *Ralston*, 62 Fed. Rep. [2d] 1026; *Di Biase* v. *Ewart & Lake, Inc.*, 228 App. Div. 407; 255 N. Y. 620.)

*Everest A. Judd* for respondents. Privity of contract was not essential. (*MacPherson* v. *Buick Motor Co.*, 217 N. Y. 382; *Smith* v. *Peerless Glass Co.*, 259 N. Y. 292; *Winterbottom* v. *Wright*, 10 M. & W. 109; *Thomas* v. *Winchester*, 6 N. Y. 397; *Kuelling* v. *Lean Mfg. Co.*, 183 N. Y. 78; *Rosenbush* v. *Ambrosia*, 168 N. Y. Supp. 505; *Torgesen* v. *Schultz*, 192 N. Y. 156; *Henry* v. *Crook*, 195 N. Y. Supp. 642; *Moch* v. *Rensselaer Water Co.*, 247 N. Y. 168.) Property damage may be recovered if material was inherently dangerous. (*Kalinowski* v. *Truck Equipment Co.*, 237 App. Div. 472; *Flessher* v. *Carstens Packing Co.*, 93 Wash. 48; *Quackenbush* v. *Ford Motor Co.*, 167 App. Div. 433; *Ultramares Corp.* v. *Touche*, 255 N. Y. 170; *Pine Grove Poultry Farm* v. *Newtown B. P. Mfg. Co.*, 248 N. Y. 293; *Mazetti* v. *Armour & Co.*, 75 Wash. 622; *Weiser* v. *Holzman*, 33 Wash. 87; *Murphy* v. *Sioux Falls Serum Co.*, 44 S. D. 421; *Skinn* v. *Reutter*, 135 Mich. 57.)

HUBBS, J.  Charles J. Call owned a farm. He entered into a contract with the defendant Rib-Stone Concrete Corporation to build and install a waterproof water tank in one of his barns. After the construction of the tank an employee of the said defendant was engaged in applying a waterproofing preparation manufactured by the defendant L. Sonneborn Sons, Inc., and known as Hydro-

cide No. 889 to the interior of the tank when an explosion occurred in the tank which resulted in the destruction of the barn and certain personal property by fire.

In doing the work an ordinary farm lantern with a globe was taken into the tank to furnish light. The fumes from the preparation being used came into contact with the flame in the lantern and caused the explosion. The plaintiffs, insurance companies, carried fire insurance policies on the property destroyed. They paid the loss and became subrogated to the rights of the insured against the defendants.

This action is to recover the amount paid to the insured, on the theory that the loss was occasioned by the negligence of the defendants. At the trial, the complaint against the defendant Rib-Stone was dismissed. A verdict was returned by the jury against the defendant Sonneborn and the judgment based thereon has been unanimously affirmed by the Appellate Division. The trial court submitted two questions to the jury: *First*, whether Hydrocide No. 889 is an inherently dangerous commodity. *Second*, if so, whether the defendant Sonneborn was negligent in failing to give notice to the users of the preparation that it was inflammable and should not be brought into contact with an open flame. The defendant Sonneborn is a manufacturer of paints, varnishes and waterproofing materials. The defendant Rib-Stone is engaged in constructing silos, water tanks, etc. It wrote to Sonneborn ordering two gallons of Hydrocide Colorless Waterproofing. In the letter it stated, " We would like to experiment with your Hydrocide #889 in connection with silos which we erect and would appreciate if you would send us about one gallon of this material."

The two gallons of " Hydrocide Colorless Waterproofing," which is used for outside work where a colorless material is required, was shipped in gallon cans, each bearing a label which read in part, " Do not use near flame." The shipment also contained a one gallon

can of Hydrocide No. 889, with a label which read "Hydrocide #889." The label did not contain any warning or notice that the contents were inflammable and should not be used near an open flame.

Rib-Stone had never used the preparation and did not know anything about it. Sonneborn wrote Rib-Stone that Hydrocide No. 889 was suitable for water-proofing the interior of silos and that it could be applied in the same manner as paint, either with a brush or a spraying machine. When applied with a brush by an employee of Rib-Stone, as stated, it exploded and burned the barn in which it was being used.

It is conceded that the commodity was a secret preparation which contained fifty-two per cent benzine and six and seven-tenths per cent kerosene and was highly inflammable.

There is no evidence that the smell of benzine was noticeable by one using the preparation. The employee using it at the time of the accident testified that he did not distinguish the odor of benzine but that it to him smelled like paint. An expert for the plaintiff made various tests of the preparation under varying conditions and testified that it was highly volatile and inflammable, that benzine is a hydro-carbon, that fumes therefrom when they reach the inflammable stage are toxic, and that an over exposure will cause death.

The evidence justified the finding of the jury that the preparation was an inherently dangerous commodity and that, under the circumstances, the defendant Sonneborn was negligent in selling it to Rib-Stone without notice of its dangerous quality.

If this were an action by the employee to recover damages for personal injuries received as a result of the explosion, we would have no doubt that a judgment in his favor would have been justified. The old rule that there must be privity of contract between the manufacturer and the person injured to justify recovery of

damages for the manufacturer's negligence has long been departed from in this jurisdiction.

In general terms, the rule of liability in this State established by numerous decisions of this court is that where a manufacturer supplies an article or preparation, for immediate use in its existing state, which is inherently dangerous, the danger not being known to the purchaser and the danger not being patent, and where notice is not given of the danger or it cannot be discovered by a reasonable inspection, the manufacturer is legally liable for personal injuries received by one who uses the same in an ordinary, expected manner. (*Thomas* v. *Winchester*, 6 N. Y. 397; *MacPherson* v. *Buick Motor Co.*, 217 N. Y. 382; *Smith* v. *Peerless Glass Co.*, 259 N. Y. 292. Cf. Restatement of the Law of Torts, section 267; *Thornhill* v. *Carpenter-Morton Co.*, 220 Mass. 593.)

Here the manufacturer knew or should have known that the preparation was to be used by employees of the corporation purchaser in an inclosed structure. True it is that the correspondence referred to silos, but the water tank in which it was used was constructed of the same materials as silos but was not as large. Plaintiff's expert testified, however, that the same effect would be produced by its use in a silo.

The manufacturer also knew or should have known that the preparation contained fifty-two per cent of benzine and six and seven-tenths per cent of kerosene and was inherently dangerous if exposed to an open flame in an inclosed structure. At least, the jury could have found that in the exercise of reasonable care, the manufacturer could have acquired such knowledge.

With that knowledge which it had or should have had, it shipped the preparation, knowing the purpose for which it was to be used, without disclosing by label or otherwise the danger of using it in an inclosed structure near an open flame, although the two cans of " Hydrocide

Colorless Waterproofing " shipped in the same package each bore a label stating " Do not use near flame."

Since the manufacturer knew or should have known that the preparation was highly inflammable, the jury was justified in finding that it should have reasonably anticipated that it might be used near an open flame which would cause an explosion and fire which would destroy property and injure the person using it. Plaintiff's expert testified that lighting a match in the tank would have produced the same effect.

It is earnestly contended by appellant that even though liability might exist for personal injuries resulting from the explosion there is no legal liability for the property damage resulting.

It is urged that the rule imposing liability upon a manufacturer for damage to a third person, resulting from its negligence, is an exception to the general rule; that such liability does not exist in the absence of privity of contract; and that the liability should not be extended so as to make a manufacturer liable for damage to property upon the principle which establishes liability for personal injuries.

The argument leads to an illogical conclusion. If it were reasonably presumable that the preparation would be used near a flame and result in an explosion and fire which might fairly be expected to injure the person using the material, it would also be reasonably foreseeable that the same fire would cause property damage.

To hold that an owner of a building injured by an explosion and fire caused by the use of the material could recover for his personal injury but could not recover for the damage to his clothing or the destruction of his building would be anomalous.

While it is true that if appellant's neglect was wrongful and threatened some injury, it is only liable for the natural consequence flowing from the wrong, still we believe that it was a question of fact whether a reasonably

foreseeable explosion and fire in a silo or water tank in or adjacent to a barn would result in the burning of the barn. In other words, the burning of the barn was properly found to be a natural result of the appellant's wrongful conduct.

" In a civil action the wrongfulness of the defendant's acts are not measured by the extent of the damage threatened." (Bohlen's Studies in the Law of Torts, p. 134.)

The question presented has never been directly passed upon by this court. In fact, it has been expressly reserved. (*Pine Grove Poultry Farm* v. *Newtown By-Products Mfg. Co.*, 248 N. Y. 293, 296; *Ultramares Corp.* v. *Touche*, 255 N. Y. 170, 191.) It must now be decided. We believe that the reasoning of the court in the personal injury cases heretofore cited and in many other cases decided by this court points the way.

" The general rule of law is that whoever does an illegal or wrongful act is answerable for all the consequences that ensue in the ordinary and natural course of events." (*Skinn* v. *Reutter*, 135 Mich. 57, 60.)

In that case the defendant sold hogs to a dealer, knowing that they were afflicted with a dangerous and infectious disease. The dealer did not know that the hogs were diseased. He sold them to plaintiff. It was decided that the defendants were liable to the plaintiff upon the ground that they committed a wrong imminently dangerous to human life and that they were, therefore, liable for damage to property.

In *Wellington* v. *Downer Kerosene Oil Co* (104 Mass. 64) the defendant, a manufacturer, sold to a retailer a barrel of oil to be resold for use in lamps. The barrel contained naphtha. Plaintiff purchased a quantity of the liquid and used it in a lamp. The lamp exploded and injured plaintiff and his property. The court held that the defendant was liable for the damage to both the person and the property as the liquid was a dangerous

commodity. GRAY, J., writing for the court said: " It is well settled that a man who delivers an article, which he knows to be dangerous or noxious, to another person, without notice of its nature and qualities, is liable for any injury which may reasonably be contemplated as likely to result, and which does in fact result, therefrom, to that person or any other, who is not himself in fault " (p. 67).

In the case of *Murphy* v. *Sioux Falls Serum Co.* (44 S. D. 421) the defendant manufacturer sold a serum which contained poison which, when used by a veterinarian, killed plaintiff's animals. It was decided that, as the substance was imminently dangerous, the defendant was liable for the property damage. (See, also, *Ellis* v. *Lindmark*, 177 Minn. 390; *Pennsylvania Steel Co.* v. *Elmore & Hamilton Contg. Co.*, 175 Fed. Rep. 176; *Quackenbush* v. *Ford Motor Co.*, 167 App. Div. 433; 60 Am. Law Review, 536; *Mazetti* v. *Armour & Co.*, 75 Wash. 622.)

A case recently decided in England extended the rule of liability to cover property damages. In *Anglo-Celtic Shipping Co.* v. *Elliott & Jeffrey* (42 T. L. R. 297) the facts were that a secret preparation manufactured by the defendants was used near a lighted candle by a third person not the defendants' vendee. An explosion occurred which resulted in the burning of plaintiff's ship. A recovery was permitted for the property damage. The preparation was sold without warning of its dangerous nature. The case cannot be distinguished from the case at bar on the facts.

Professor Harper, in his late work on Torts, says: " Several cases have established a duty on the part of manufacturers of patent medicines and other compounds made under a secret formula which is similar to that under discussion. This duty is, in substance, to adopt reasonable means of giving such information and

instructions as will make it reasonably safe for those intended to use it. * * *

" In one English case (*Anglo-Celtic Shipping Co.* v. *Elliott & Jeffrey, supra*) the defendants, who were manufacturers of a cleansing fluid for machinery, were held liable for property damage due to chemical reactions of which the user had not been warned. A Massachusetts case (*Windram Manufacturing Co.* v. *Boston Blacking Co.*, 239 Mass. 123), however, refused to apply the principle to make the manufacturer of a cement for fabrics liable for damages done to the plaintiff's goods in the absence of a sale by the defendant direct to the plaintiff. The Massachusetts decision is clearly an undesirable result and the case, on its facts, is much less favorable to the defendant than the *Anglo-Celtic* case, as in the former case the manufacturer actually knew of the dangerous quality of his product, while in the English case, the defendant was ignorant thereof. Since, however, the manufacturer is in a better position to discover such qualities, he should be held to reasonable care in ascertaining them and giving adequate notice thereof." (Harper, Law of Torts, § 106, pp. 244, 245.)

It should be noted that in the *Windram* case the material sold was not inherently dangerous to life and limb, which distinguishes it from the Massachusetts rule as laid down in *Wellington* v. *Downer Kerosene Oil Co.* (*supra*).

As Hydrocide No. 889, manufactured by defendant, was a secret, highly explosive preparation, imminently dangerous to life and property, sold without warning of its dangerous nature, intended to be used in the condition it was in when delivered and was used for the purpose for which it was recommended in a way that should have been reasonably anticipated, we believe that the defendant manufacturer is legally responsible for the damage to property which resulted from its use.

We also believe such decision is in harmony with the public policy of the State as embodied in chapter 50 of the

Laws of 1921 (Labor Law; Cons. Laws, ch. 31, art. 16, §§ 451, 452) which defines the word " explosives," regulates their use, storage, transportation, etc., and provides that " every container shall be plainly marked with the name of the explosive contained therein," and makes the violation of the provisions of the article a misdemeanor.

We do not mean to decide that a manufacturer of a secret product would be legally liable in all cases for failure to warn of a hidden danger in the use of the product by one other than a vendee. We confine our decision to cases in which the use of the product is imminently dangerous to life and property.

In each case, the judgment should be affirmed, with costs.

POUND, Ch. J., CRANE, LEHMAN, O'BRIEN and CROUCH, JJ., concur; KELLOGG, J., not voting.

Judgments affirmed.