**SPENCER et al. v. MADSEN.**

**SAME v. HEYNE SERVICE STATION, Inc.**

Nos. 2840, 2841.

Circuit Court of Appeals, Tenth Circuit.

May 15, 1944.

[9] Revenue Act of 1938, § 901(a) (2), 26 U.S.C.A. Int.Rev.Acts, page 1161.

[10] Helm & Smith, Syndicate v. Commissioner, 9 Cir., 136 F.2d 440.

J. B. McKay, of El Dorado, Kan., and A. R. Lamb, of Coffeyville, Kan. (E. E. Lamb, of Yates Center, Kan., on the brief), for appellants.

Wayne Coulson and Paul R. Kitch, both of Wichita, Kan. (John Hudson and Dean Frazier, both of Kansas City, Mo., and Howard T. Fleeson and Homer V. Gooing, both of Wichita, Kan., on the brief), for appellees.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

Heyne Service Station, Inc.,[1] a Nebraska corporation, brought an action against F. G. Spencer and Bertha Spencer to recover damages to a gasoline transport. Henry M. Madsen brought an action against the Spencers to recover damages for personal injuries. The damages to the gasoline transport and to Madsen resulted from the same accident. The two cases were consolidated for trial and were tried to the court without a jury.

The trial court found these facts:

In April, 1941, Heyne purchased from the Standard Steel Works[2] a semi-trailer consisting of a chassis with a tank mounted thereon designed for the transportation of gasoline. It had a capacity of 3850 gallons. The chassis of the trailer was designed, manufactured, and assembled by the Spencers. The tank was mounted thereon by Standard.

Heyne attached the trailer to a White tractor, the two together constituting the gasoline transport. Heyne put the transport into regular service for the transportation of motor fuels between Kansas City, Kansas, and Pender, Nebraska. On May, 11, 1941, when the transport was being driven by Madsen, an employee of Heyne, on U. S. Highway No. 73, at a speed of 25 to 30 miles per hour, the rear axle of the trailer broke, causing the transport to overturn in a ditch along the highway, resulting in damage to the trailer and tractor, the loss of the cargo, and injuries to Madsen. The axle broke because of a defect therein existing when it was installed by the Spencers; the defect consisted of an irregularity in the grain of the metal and a crack on the upper surface of the axle underneath the spring seat which had been welded on to the axle by the Spencers. The axle was forged by the Unit Drop Forge Division of Fuller Manufacturing Company of Milwaukee, Wisconsin, in accordance with specifications and blueprints furnished by the Spencers.

It is customary in the automotive industry to inspect all metal forgings for defects. One method is to suspend the forging and strike it with a hammer. A defect can be discerned from the sound given forth. Another method is known as the "magna-flux" test. Magnetized particles of metal, called "flux," are run or sprayed on the surface of the forging. Defects can be discerned by the positions assumed by the magnetized particles of metal. Still another method is to paint the surface. When the paint dries, surface defects in the metal will be discernible. The only test of the axle made by the Spencers was to paint it. However, the paint was applied after the spring seat had been welded on to the axle. It was not applied at the site of the defect. Defects in metal forgings are seldom discernible with the naked eye.

---

[1] Hereinafter called Heyne.

[2] Hereinafter called Standard.

At the time the chassis was assembled and constructed by the Spencers, they knew that a fuel tank would be mounted thereon, that the trailer would be used for the transportation of gasoline, and that if the axle was defective, the trailer would be dangerous to the life and limb of the driver thereof. The defect could have been discovered by the Spencers by a reasonable inspection and they were negligent in failing to make a reasonable inspection of the axle.

From a judgment in favor of Madsen for $2,500, and in favor of Heyne for $3,300.95, the Spencers have appealed.

■ Madsen testified that as he was proceeding along U. S. Highway No. 73, near Reserve, Kansas, traveling west and approaching a right-hand curve, he heard a noise, and a kind of thud, and felt the trailer drop down and lean to the left, that the transport went out of control and upset into the ditch along the highway, and that he traveled about 70 or 80 feet from the time he heard the thud until he overturned in the ditch.

The highway at the point of the accident was paved with what is commonly called a "black top," consisting of an oil mat approximately 35 feet in width. There were no marks or scars in the pavement between the point where Madsen first heard the noise and the point where the transport overturned. The trailer was mounted on a three-point suspension. The break in the axle occurred 15 inches from the pressure point of the wheel. After the accident the dual wheels and the broken left end of the axle were found 15 feet to the left and behind the transport.

Counsel for the Spencers contend that had the break occurred, as testified to by Madsen, the rear end of the truck would have dropped down and scarred the highway, and advance the theory that the break in the axle was caused by the overturning of the truck rather than that the axle broke and caused the truck to overturn. They assert that the physical facts refute the testimony of Madsen. Both ends of the axle were bolted to the frame of the trailer. An expert witness for Heyne and Madsen testified that whether the left rear end of the trailer would sag sufficiently to scar the pavement would depend on whether the other points of suspension were capable of supporting the tank and trailer with one wheel removed; that it depended on the torsional strength and rigidity of the structure and the mounting of the trailer and tank; that if the structure had sufficient torsional strength and rigidity and the tank was mounted sufficiently forward to cause a counterbalancing effect to make up in part for the loss of support, the trailer might not sag enough to contact the pavement. There was no proof that the construction of the trailer and tank was such that the loss of the support of one wheel would cause the left rear end to sag and contact the pavement.

There was a plate attached to the axle on which it was stated that the normal capacity of the axle was 16,000 pounds. The approximate weight of the load carried on three-point suspension was 33,400 pounds. If the weight was evenly distributed, there would have been 16,700 pounds on the rear axle, or an excess of 700 pounds over its rated capacity. There was no proof, however, that the weight was evenly distributed. Two experts for Heyne and Madsen subjected the unbroken end of the axle to weight tests. They testified that such tests revealed that the axle, if not defective, would sustain a weight in excess of 45,820 pounds. One of them testified that assuming the axle was loaded 750 pounds in excess of its rated capacity, such overload would not have appreciably contributed to the failure of the axle.

While the evidence was conflicting with respect to the alleged defects in the axle and the tests ordinarily applied to determine defects in forged metal, it is sufficient to say that there was substantial evidence to support the findings of the court with regard thereto, and that such findings are not clearly erroneous.

■ It is the general rule that a constructor, manufacturer, or vendor of an article is not liable to third parties, who have no contractual relation with him, for negligence in the construction, manufacture, or sale of such article. The rule springs from the principle that one owes no duty to persons with whom he has no privity of contract, and, absent a breach of duty, there can be no actionable negligence.[3] However, in MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, 1053, L.R.A.1916F, 696, Ann.Cas.1916C,

[3] United States Radiator Corp. v. Henderson, 10 Cir., 68 F.2d 87, 92, certiorari denied 292 U.S. 650, 54 S.Ct. 860, 78 L.Ed. 1500, and cases there cited.

440, the court announced an exception to the general rule in the following language:

"If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully."

In that case the court held that an automobile manufacturer is chargeable with knowledge that an automobile equipped with weak and defective wheels is a dangerous machine, and that where such manufacturer purchased iron and painted wheels from a reputable dealer, and exercised no care to determine whether they were defective, except to run the automobile several miles for a test, it is liable for an injury to one who purchased the car from the manufacturer's vendee, and was injured by the collapse of a wheel because of a defect which might have been discovered by proper inspection by the manufacturer.

The decision in the MacPherson case has received wide spread judicial approval and may now be regarded as stating the generally accepted law on the subject.[4] It was followed by this court in United States Radiator Corp. v. Henderson, 10 Cir., 68 F.2d 87, certiorari denied 292 U.S. 650, 54 S.Ct. 860, 78 L.Ed. 1500. The Kansas Supreme Court in Stevens v. Allis-Chalmers Mfg. Co., 151 Kan. 638, 100 P.2d 723, 728, recognized the rule announced in the MacPherson case, but held it inapplicable where the injured person has knowledge of the defect.

Counsel for the Spencers contend that they only manufactured a component part of the finished trailer. The Spencers manufactured a semi-trailer chassis. All Standard did was to add a fuel tank, which the Spencers knew would be added. The trailer chassis, as assembled and constructed by the Spencers, was capable of running on its own wheels. Since the decision in the MacPherson case, the courts have applied the rule announced in that case to manufacturers of a thing, whether it be a component part or an assembled entity.[5]

Counsel for the Spencers assert the trailer chassis was not inherently dangerous. Liability here is not predicated on the fact that the thing, when properly constructed, is inherently dangerous. Rather, it rests upon the principle that where the thing, when put to the uses for which it is intended by the manufacturer, by reason of defects which were known or could have been known by the exercise of reasonable care by the manufacturer, is dangerous to life and limb, the manufacturer is liable to third persons.[6]

Counsel for the Spencers assert that the doctrine in the MacPherson case is not applicable where the damage is to property. We can conceive of no reason why the doctrine should be so limited. We applied it to damages to property in United States Radiator Corp. v. Henderson, supra. We think the weight of authority supports that view.[7]

The judgment is affirmed.

[4] United States Radiator Corp. v. Henderson, 10 Cir., 68 F.2d 87, certiorari denied 292 U.S. 650, 54 S.Ct. 860, 78 L. Ed. 1500; Restatement, Torts, §§ 395, 396.

[5] Smith v. Peerless Glass Co., Inc., 259 N.Y. 292, 181 N.E. 576, 577; General Accident, etc., v. Goodyear Tire & Rubber Co., 2 Cir., 132 F.2d 122, 125.

See, also, Restatement, Torts, § 395, Illustrations 1 and 2, pp. 1075, 1078.

[6] Reusch v. Ford Motor Co., 196 Wash. 213, 82 P.2d 556, 559; Johnson v. Cadillac Motor Car Co., C.C.N.Y., 194 F. 497, 501; Id., 2 Cir., 261 F. 878, 882, 883, 8 A.L.R. 1023; Heckel v. Ford Motor Co., 101 N.J.L. 385, 128 A. 242, 243, 39 A.L.R. 989; United States Radiator Corp. v. Henderson, 10 Cir., 68 F.2d 87, 91, 92, certiorari denied 292 U.S. 650, 54 S.Ct. 860, 78 L.Ed. 1500.

[7] See Marsh Wood Products Co. v. Babcock & Wilcox Co., 207 Wis. 209, 240 N. W. 392, 399; Genesee County Patrons F. R. Ass'n v. L. Sonneborn Sons, 263 N.Y. 463, 189 N.E. 551, 553; Quackenbush v. Ford Motor Co., 167 App.Div. 433, 153 N.Y.S. 131, 133; Restatement, Torts, § 497.

Cf. Windram Mfg. Co. v. Boston Blacking Co., 239 Mass. 123, 131 N.E. 454, 17 A.L.R. 669.