**GOSS PRINTING PRESS COMPANY,**
Appellant

v.

**Edwin MAYHEW, William M. Frazee, Montgomery B. Moltz and Arthur M. Quina, Jr., Appellees.**

No. 16045.

United States Court of Appeals District of Columbia Circuit.

Argued March 20, 1961.

Decided June 8, 1961.

Mr. Justin L. Edgerton, Washington, D. C., with whom Mr. Charles E. Pledger, Jr., and Messrs. John F. Mahoney, Jr., and R. Harrison Pledger, Jr., Washington, D. C., were on the brief, for appellant.

Mr. Martin E. Gerel, Washington, D. C., for appellees. Mr. Lee C. Ashcraft, Washington, D. C., also entered an appearance for appellees.

Before PHILLIPS, Senior United States Circuit Judge for the Tenth Circuit,* and BAZELON and BASTIAN, Circuit Judges.

PHILLIPS, Circuit Judge.

Mayhew, Frazee, Moltz and Quina, Jr.,[1] brought this action against the Goss Printing Press Company[2] to recover damages for personal injuries. From judgments for the plaintiffs Goss has appealed.

Goss manufactures and sells printing presses and accessory equipment. On June 5, 1950, it entered into a contract

---

\* Sitting by designation pursuant to 28 U.S. Code § 294(d).

1. Hereinafter called plaintiffs.

2. Hereinafter called Goss.

with the Washington Times-Herald, Inc.,[3] for the sale to the latter of certain newspaper printing press equipment, including certain press units. Embraced in the equipment to be furnished was a catwalk at the upper level of Press A, along which a horizontal guard or hand-rail was constructed. The rail consisted of sections of hollow metal tubing. At intervals along the catwalk there were vertical hollow metal posts with tee members at the top of the posts. The ends of the rail members were inserted into the ends of the horizontal section of the tees and held in position by means of screws inserted through holes in the tees and the ends of the rail sections. The rail sections were of various lengths and were numbered, and blueprints were furnished by Goss, which indicated the place where each railing was to be installed and the number and length of each railing.

Goss furnished the printing press equipment embraced in the contract to Times-Herald at Chicago, Illinois. The presses and equipment were transported to Washington. Times-Herald entered into a contract with Centre-Ammon Company[4] for the installation of the printing presses and equipment.

The sale contract in part provided:

"Goss shall furnish at Times-Herald's expense one or more competent expert mechanics to supervise the erection, * * * of the machinery at Times-Herald's plant * * * and Times-Herald shall provide everything else required therefor. Times-Herald shall pay currently and promptly for the services, transportation, board and lodging of said expert mechanics from the time of departure from the Goss plant until their return, at then prevailing wages for such mechanics and subject to then existing rules and customs of Goss as to working conditions, hours, and overtime."

One of the mechanics furnished by Goss to supervise the installation of the printing press equipment was Eugene Connelly.[5] Connelly and other supervisors sent out by Goss to supervise the installation of printing press equipment were specially trained by Goss to perform such supervision.

One section of the railing was designated as No. 4 on B69187. The blueprint indicated that Section 4 was 74½ inches in length and also the place on the catwalk where it was to be installed. Instead of installing that Section 4 at such place, workmen for Centre-Ammon installed a section of railing, designated as No. 12 on B69187, which was only 72%₁₆ inches in length, and which the blueprint indicated should be installed at another place on the catwalk. One end of Railing Section No. 12, hereinafter referred to as the "A" end, was inserted in the tee only ³⁄₁₆ of an inch and the screw holes which were slightly less than ⅛ of an inch in diameter were only ¹⁄₁₆ of an inch from the "A" end of the railing section. The other end of the railing was inserted ¹⁵⁄₃₂ of an inch into the tee.

Goss supplied Bessemer rods to pin and secure the railing sections in place in the tees, but Centre-Ammon used screws instead of the rods. The holes for screws were drilled in the end of the rail section by Centre-Ammon.

Mr. Nolan, a Vice-President of Goss, and its Field Superintendent when the railings were installed, called as a witness for the plaintiffs, testified that the entire installation, including the handrails and catwalks, was supervised by Connelly.

On September 27, 1956, three of the plaintiffs were working on the upper level of Press A on the catwalk where Railing Section No. 12 had been installed. Screw holes at the "A" end of Section 12 tore out to the end of the railing, causing the railing to give way at such end and causing three of the plaintiffs to fall

---

3. Hereinafter called Times-Herald.

4. Hereinafter called Centre-Ammon.

5. Mr. Connelly was deceased at the time of the trial below.

from the catwalk to the steel floor below. In their fall one or more of them struck the fourth plaintiff, Moltz. All the plaintiffs suffered personal injuries.

Section 12 had remained without change, as originally installed, up to the time of the accident.

William J. Nolan was called as a witness in behalf of the defendant. On direct examination he testified that Connelly was one of the mechanics furnished by Goss to supervise the erection of the presses and equipment; that as such supervisor he could "tell" Centre-Ammon "what to do" with regard to the installation of machinery, and if it refused he could then "go through the Times-Herald" to obtain correction of defective or improper installation. He further testified that with respect to the catwalk and rails Connelly had no control, except observation, and no responsibility with respect thereto. However, on cross-examination, after again testifying that Connelly could order Centre-Ammon to correct improper or defective installation of "mechanical parts," he further testified that, while Connelly could not directly order Centre-Ammon to correct improper or defective installation of catwalks or railings, he could "go through the Times-Herald" to obtain such correction. Thus, it will be seen that the issue of the extent of Connelly's authority as supervisor was presented by evidence introduced on the part of Goss. The question of whether, under the contract of sale, Goss had the obligation to supervise the installation of the handrails and see that they were properly installed, or whether such supervision was limited to the operating machinery only, was submitted to the jury by the court under proper instructions. No specific objection was made to the charge to the jury, as required by Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C. and hence Goss may not assign error based on instructions given or refused; and there was no error in the charge of such fundamental character that this court would be warranted in noting it of its own motion. The issue of the extent of

Connelly's duty and authority to supervise with respect to the erection and installation of the handrails was injected into the case by the evidence of Nolan, who testified without objection with respect thereto, both as a witness for the plaintiffs and Goss, and Goss may not now complain that the court should have decided that issue as a matter of law on the basis of the language of the contract.

It is clear that Centre-Ammon was guilty of negligence in installing the short railing, Section No. 12, where Section No. 4 should have been installed and drilling the holes in the "A" end of Railing 12 so near the end thereof that it did not have sufficient strength to withstand a normal strain without tearing it out of the screw hole. It is also clear that Connelly, a trained and experienced expert in the supervision of the erection and installation of the railing and other equipment, in the course of ordinary inspection could and should have learned that the incorrect and short railing was installed at No. 4 position and that it was not long enough to permit it to be securely fastened in the tee and that as installed it would be a peril to the workmen at Times-Herald, who could rightfully assume it had been properly installed.

On this record we were unable to conclude that the parties intended that Connelly's duties and powers as supervisor of erection were less with respect to the installation and erection of safety devices, such as the handrail, than they were with respect to moving parts or machinery embraced in the printing press equipment, or that they intended there should not be a careful and thorough inspection and supervision with respect to the erection of the safety devices. We must, therefore, assume that the jury properly resolved the issue with respect to inspection and supervision of the handrail installation.

In Spencer v. Madsen, 10 Cir., 142 F.2d 820, 822–823, the court said:

"It is the general rule that a constructor, manufacturer, or vendor of an article is not liable to third par-

ties, who have no contractual relation with him, for negligence in the construction, manufacture, or sale of such article. The rule springs from the principle that one owes no duty to persons with whom he has no privity of contract, and, absent a breach of duty, there can be no actionable negligence. However, in MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, 1053, L.R.A.1916F, 696, * * * the court announced an exception to the general rule in the following language:

" 'If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully.' "

Spencer v. Madsen, supra, was cited with approval by this court in Hanna v. Fletcher, 97 U.S.App.D.C. 310, 231 F.2d 469, 473, 58 A.L.R.2d 847, certiorari denied Gichner Iron Works, Inc. v. Hanna, 351 U.S. 989, 76 L.Ed. 1051, 100 L.Ed. 1501.

It is plain that Times-Herald relied on Goss for proper and effective inspection and supervision of the handrail installation; and that the catwalk would be used with the protective handrail by Times-Herald employees without further inspection or tests and in the belief by such employees that the railing had been properly and safely installed, so as to function effectively as a safety device.

The long lapse of time before the handrail gave way was not due to any deterioration in the railing or in the means by which it was secured in the tee as appears in Hanna v. Fletcher, supra. It was no doubt due to the fact that workmen had not, prior to the accident, placed sufficient strain by their bodies against the railing to tear it loose. There was no evidence that the strain on the railing at the time of the accident was extraordinary or unusual.

We think the case falls within the doctrine of the MacPherson case and cases that have adopted and followed the MacPherson rule.

The judgments are therefore

Affirmed.