**Anderson**
v.
**Olmsted Utility Equipment**
*[Cite as 2 AOA 635]*

*Case No. 4047*
*Trumbull County, (11th)*
*Decided March 30, 1990*

*R.C. 2307.71*

*Martin White, Esq., 175 Franklin Street, S.E. Warren, OH 44481, (For Plaintiffs-Appellees)*

*Edward Brown, Esq., Irene Keyse-Walker, Esq., Margaret Higgins, Esq., 1100 Huntington Building, Cleveland, OH 44115, (For Defendant-Appellant Olmsted Utility Equipment, Inc.)*

*Norman A. Rheuban, Esq., 132 South Broad Street, Canfield, OH 44406, (For Defendant-Appellee Regal Tube Company)*

*Walter Matchinga, Esq., 800 Leader Building, Cleveland, OH 44114, (For Defendant-Appellee The Harvey Hubbel Corporation, Ohio Brass Division)*

WINTER, J.

David Anderson and Mark Carlson were employed as electrical linemen for the City of Niles. In order to perform their duties, the linemen employ trucks with a hydraulic aerial bucket lift shaped like an elbow. The elbow consists of two metal arm-like pieces connected at a joint. The linemen service the lines by standing in "buckets" which are located at the end of the upper arm. A hydraulic cylinder at the base provides the thrust needed to raise the buckets so that the linemen are able to reach the electrical devices to be serviced.

In 1974, the city purchased a utility truck from Holan Equipment Division through a supplier, Cerni Motor Sales. In 1984, the city decided to replace the truck which had between 60,000 and 70,000 miles on the vehicle and a rusted-out body.

The city solicited bids for the purchase of a new truck with a remanufactured hydraulic aerial bucket lift. The bidders included Olmsted Utility Company, Inc., ("Olmsted") a manufacturer of digger derricks, aerial devices and utility bodies, as well as a dealer of Holan aerial devices.

The city subsequently awarded Olmsted the contract. As part of the contract terms, Olmsted provided the following specifications for the hydraulic elbow:

"The Holan 804 is to be a total remanufactured including 100% tear down, inspection and rebuild. ***All replacement parts are to be original equipment parts. The City of Niles is interested in having this equipment rebuilt to 100% Holan specifications and safety. Alternate and substitute parts not approved in writing by Holan engineering ARE NOT ACCEPTABLE."

The contract also included the following warranty provided by Olmsted:

"8. *WARRANTY:* The Bidder, by executing this Contract, warrants that the 1985 Line Truck with Remounted Used Hyrdaulic Elbow shall be free from defects in materials and workmanship for a period of One (1) Year from the date of delivery, or until said vehicle has been driven 12,000 miles, whichever occurs earlier. ***This express warranty shall not be construed to waive or diminish any other warranties implied in fact or implied in law, or any other right or remedies of the City."

By early September 1985, Olmsted provided the city with a new 1985 line truck which included the remanufactured hydraulic aerial bucket lift furnished as part of the trade-in by the City of Niles.

On September 18, 1985, Anderson and Carlson used the new truck to transfer wires from an old utility pole to a new one. While both men stood in the buckets at a height of twenty-five to thirty feet, the entire elbow dropped and caused the buckets to strike the ground. Both men suffered injuries as a consequence of the fall.

Inspections after the accident revealed that the lower arm hyraulic cylinder had failed.

On April 30, 1986, Anderson, his wife Charlene, and Carlson (appellees) filed suit for personal injuries against appellant Olmsted Utility Company, Inc. and Holan Equipment Division. Appellees alleged that Holan, as manufacturer and seller of the defective aerial bucket lift, breached its express and implied warranties. Appellees also alleged that Olmsted serviced and remanufactured the aerial bucket lift and had breached express and implied warranties. Appellees further alleged that both Holan and Olmsted had been negligent.

On May 4, 1987, Holan moved for summary judgment on the ground that it was a successor corporation to the manufacturer of the aerial bucket lift and thus could not be held liable for any defect in the failed cylinder that caused appellees' injuries. On May 14, 1987, the court granted Holan's motion and dismissed Holan from the case.[1] Appellees then filed an amended complaint naming only appellant as a defendant. The new complaint contained an additional allegation that appellant had remanufactured the failed cylinder and was strictly liable for appellees' injuries. On May 12, 1987, appellant filed a third-party complaint against Ohio Brass Division, Harvey Hubbell Corporation, Universal Hydraulics, Inc. and Regal Tube Company. Ohio Brass was the manufacturer's parent, Regal Tube manufactured the cylinder tube that ruptured, and Universal Hydraulics supplied the cylinder to the manufacturer.

The third-party defendants moved to dismiss appellant's third-party complaint on the grounds that they could not be held liable because appellant had "remanufactured" the hyrdaulic aerial bucket lift. The court granted these motions to dismiss.

Appellant moved for a directed verdict on the strict liability and express warranty claims. The trial court denied these motions and granted appellees' motion to withdraw their negligence claims. The case went to the jury on theories of strict liability and breach of express warranty.

The jury found in favor of appellees: David Anderson for $324,675; Charlene Anderson for $36,075; and Mark Carlson for $93,750.

The jury also answered four special interrogatories as follows:

"1. Did the defendant sell the aerial device to the City of Niles?

Answer: No;

"2. Did the Defendant remanufacture or rebuild the aerial device for the City of Niles?

Answer: Yes;

"3. Did the Defendant breach its express warranty to the City of Niles?

Answer: Yes; and

"4. If the answer (to Question Number Three) is yes, in what respects did the Defendant breach its express warranty?

Answer: Based on our examination of the evidence, we find that the aerial device was not free of defects in material and that these defects were the proximate cause of the equipment failure."

On March 24, 1988, appellant timely filed a notice of appeal and assigns the following as error:

"1. The trial court erred in failing to grant defendant-appellant's motion for a directed verdict on Counts 2 and 6 of plaintiffs-appellees' amended complaint.

"2. The trial court erred in failing to grant defendant-appellant's motion for a directed verdict on Counts 1 and 5 of plaintiffs-appellees' amended complaint.

"3. The trial court erred in granting the motions of third-party defendants Regal Tube and the Ohio Brass Division of Harvey Hubbell Corp. to dismiss defendant-appellant's amended third-party complaint.

"4. The trial court erred in excluding opinion testimony of defense witnesses."

In its first assignment of error, appellant argues that the court erred in denying its motion for a directed verdict on the strict liability and breach of implied warranty counts. Appellant claims that it did not sell or manufacture the defective hydraulic elbow. Rather, appellant merely repaired and refurbished the elbow. Since appellant claims it is not a seller or manufacturer, appellant contends that the trial court erred in not dismissing the strict liability claim.

In this assignment, the determinative issue is whether appellant fits within the definition of "manufacturer" and is thereby liable under the theories of strict liability and breach of implied warranty. Through special interrogatories, the jury found that appellant did not sell the aerial device but did remanufacture or rebuild the aerial device.

In *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, the Ohio Supreme Court adopted Section 402A of the Restatement of Torts (2d) as its law on strict liability. Section 402A holds the seller or manufacturer of a defective product strictly liable for physical harm caused to the users or consumer of the product. The *Temple* court also stated that an action for breach of implied warranty is virtually indistinguishable from an action for strict liability in tort. *Temple, supra,* at 322.

Neither the comments to Section 402A nor Ohio case law are instructive as to whether the definition of "manufacturer" encompasses a "remanufacturer" or "rebuilder." Section 102(B) of the Model Uniform Product Liability Act offers guidance and states that a "manufacturer includes a product seller who designs, produces, makes, fabricates, constructs, or *remanufactures* the relevant product or component part of a product before its sale to a user or consumer." (Emphasis added.) Although the Model Uniform Product Liability Act has not been adopted in Ohio, the newly-enacted Ohio Revised Code Section 2307.71 mirrors the above section and states as follows:

"(I) 'Manufacturer' means a person engaged in a business to design, formulate, produce, create, make, construct, assemble, or *rebuild* a product or a component of a product." (Emphasis added.)

Appellant makes the argument that it merely "repaired" or "refurbished" the aerial device and that it is subject to liability only under a theory of negligence. The words "repair" and "refurbish" do not appear anywhere in the contract. Further, such language was not used in the jury's answer to special interrogatories. Rather, the jury found that appellant "remanufactured" or "rebuilt" the aerial device. Based upon the above-cited provisions, one who "rebuilds" or "remanufactures" a product is considered a manufacturer and subject to strict liability.

In *Rollins* v. *Cherokee Warehouses, Inc.* (E.D. Tenn. 1986), 635 F. Supp. 136, plaintiff was injured by a defective forklift. Plaintiff alleged that prior to selling the forklift, defendant had substantially rebuilt or reconditioned the lift.

The district court held that a cause of action for strict liability existed. *Id.* at 139. Under Tennessee's version of the Model Uniform Product Liability Act, a seller of used products who rebuilds or remanufactures the product for resale should be liable as a manufacturer. *Id.* at 137-138. Two conditions must be met before a rebuilder or remanufacturer can be strictly liable. First, the rebuilder or remanufacturer must be "engaged in the business" of selling products. *Id.* at 138. This means that the "seller" is continuously involved in placing a particular product in the stream of commerce through selling the product to other persons or business entities. *Id.* at 138. Second, the product must be in a defective or unreasonably dangerous condition at the time leaves the control of the remanufacturer before strict liability attaches. *Id.* at 138-139. See also, *Markle* v. *Mulholland's Inc.* (1973), 265 Or. 259, 509 P. 2d 529; *Gentile* v. *MacGregor Manufacturing Co.* (1985), 201 N.J. Super. 612, 493 A. 2d 647.

In this case, appellant was in the business of selling trucks with "bucket arm" devices. According to appellant's president, David Tapfer, appellant also sold aerial devices, manufactured utility bodies, supplied

replacement parts and did repair work, all in the ordinary course of business. Thus, the sale of the 1985 Line Truck with a remanufactured hydraulic elbow was not an isolated transaction.

There was also evidence in which the jury could conclude that the product was defective or unreasonably dangerous when it left appellant's control. Expert witness, Dr. Bhanu Deoras, testified that a defect, improper bond fusion, existed in the weld on the outer cylinder at the time of its original manufacture. Dr. Deoras also stated that appellant cross-threaded the inner cylinder and outer cylinder during assembly. Further, the lack of bond fusion, coupled with the improper cross-threading, caused a fine crack at the base of the outer cylinder. The crack spread and caused the cylinder to fail. Based upon this testimony, the jury could conclude that appellant's act of cross threading caused the hyrdaulic cylinder to leave its control in a defective or unreasonably dangerous condition.

Finally, appellant asserts that it was merely a "bailee" or a "repairer." These issues were never raised at trial nor was the jury instructed on these concepts. In addition, Olmsted's contract required them to remanufacture or rebuild the hydraulic elbow. For these reasons, the court will not discuss those arguments.

Appellant's first assignment is without merit.

In its second assignment of error, appellant argues that the trial court erred in failing to grant its motions for directed verdict on Counts 1 and 5 which claimed breach of express warranty.

As discussed in the first assignment, the express warranty provided by appellant specifically provided that the hydraulic elbow would be free from defects in materials and workmanship for a period of one year. The jury found, in answer to the special interrogatories, that appellant breached this warranty by using materials which were not free from defects and which were the proximate cause of the accident. Clearly, the trial court, construing evidence most strongly in favor of the appellee, could not find that reasonable minds could come only to the conclusion that appellant did not breach its express warranty. The trial court correctly denied appellant's motion for a directed verdict on the issue of breach of express warranty. This argument is without merit.

Appellant argues that appellees were not third-party beneficiaries of the contract between appellant and Niles and thus cannot benefit from the breach of warranty claim. Appellant further argues that appellees failed to show that they relied on any warranties.

A third-party may enforce a promise made for his benefit even though he was not a party to the contract. *Rhorbacker* v. *The Citizens Building Assocation Co.* (1941), 138 Ohio St. 273. In order for a third person to enforce a promise made for this benefit, it must be established that the contract was made primarily for his benefit or for the benefit of a class of persons to which he belongs. *Chitlik* v. *Allstate Ins. Co.* (1973), 34 Ohio App. 2d 193.

At trial, appellees produced sufficient evidence in which the jury could find that appellees were the intended beneficiaries of the contract between appellant and the City of Niles. When questioned about the aerial device, Charles Burgess responded:

"Q. Okay. What was the purpose of having it rebuilt at all? Why not just attach it back on the original truck?

"A. Various bearings and pins would wear over the years and we wanted all the worn parts replaced.

"Q. Is that for safety reasons?

"A. Yes.

"Q. For the person who used the truck?

"A. That's right.

"Q. That would be the linemen of the City of Niles?

"A. Correct."

Additionally, the contract specified that the City of Niles wanted the equipment "rebuilt to 100% Holan specifications and *Safety*." It is apparent that the parties were concerned with the safety of the city's linemen, who were at risk when the aerial device was in use. Thus, the city linemen, such as appellees, and not the public at large, were intended to benefit from the contract between appellant and the City of Niles.

Appellant's second assignment of error is without merit. In its third assignment of error, appellant argues that the court erred in granting the third-party defendants' motion to dismiss pursuant to Civ. R. 12(B)(6).

The third-party defendants, Ohio Brass, Regal Tube and Universal Hydraulics,[2] moved to dismiss on the grounds that they could not be held liable because appellant had "remanufactured" the hydraulic elbow.

Civ. R. 12(B)(6) provides for dismissal for failure to state a claim upon which relief can be granted. In order for a court to dismiss a

complaint for failure to state a claim upon which relief can be granted, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery. *O'Brien* v. *University Community Tenants Union* (1975), 42 Ohio St. 2d 242. Civ. R. 12(B)(6) motions to dismiss for failure to state a claim upon which relief can be granted test the sufficiency of the complaint, and are not to be used to terminate litigation on its merits. *Slife* v. *Kundtz Properties* (1974), 40 Ohio App. 2d 179.

In its judgment entry dismissing the third-party complaints against Ohio Brass and Regal, the court stated that it was dismissing the parties because of failure to state a claim upon which relief can be granted and because the third-party complaints as it pertained to Regal was moot. Presumably, this was because appellees' amended complaint alleged that appellant had remanufactured the failed cylinder.

The lower court erred in dismissing appellant's amended third-party complaint because the complaint is sufficient on its face. The complaint reads in part as follows:

"3. The part of the bucket truck which allegedly failed and caused the bucket to fall to the ground was the hydraulic lift cylinder (cylinder) or the 'boom arm.'

"4. When the subject truck was manufactured, with this cylinder, the Holan Equipment Division was a wholly owned and controlled division of Ohio Brass.

"5. The cylinder installed by Ohio Brass was manufactured and/or supplied to Ohio Brass by Universal.

"6. The cylinder tube used by Universal in this cylinder was manufactured by and/or supplied to Universal by Regal.

"7. The cylinder tube was not modified in any way nor at any time by Olmsted.

"8. Any defects in the product which resulted in plaintiffs injuries were caused by the acts or negligence of the third-parties defendants, either individually or jointly or in combination in the manufacture of the truck or its component parts.

"9. Third parties defendants either expressly or impliedly warranted their product or products to be free of defects in material and workmanship."

A manufacturer of a defective component supplied to another manufacturer may be liable in negligence. See, *e.g., Spencer* v. *Madsen* (10th Cir. 1944), 142 F. 2d 820. Additionally, a party liable for the defective product of another may recover in an action for indemnification against the manufacturer. *Columbus Bd. of Edn.* v. *Fry, Inc.* (1984), 22 Ohio App. 3d 94.

Since the third-party appellees may have been liable to appellant for supplying a defective component part, *i.e.*, the defective cylinder tube, the lower court should not have dismissed the third-party complaint.

Regal and Ohio Brass argue that if appellant succeeds on its appeal, the court must remand the entire case on the issues of liability and damages since they were not given the opportunity to defend or participate in the defense of the action.

In an indemnity action, the indemnitor is bound by a judgment against the indemnitee if the indemnitor had notice of the suit in which judgment was rendered and an opportunity to defend. *Miller* v. *Rhoades* (1870), 20 Ohio St. 494; *The First National Bank of Mount Vernon, Ohio* v. *The First National Bank of Lincoln, Illinois* (1903), 68 Ohio St. 43. Absent fraud or collusion, the parties may not relitigate the issue determined in the first action. *Cincinnati* v. *Boston* (1917), 7 Ohio App. 350. The prior judgment is conclusive evidence of the necessary facts in the present suit against the indemnitor as to the amount of damages sustained. *Miller, supra.*

In this case, Regal and Ohio Brass had due notice of the suit and an opportunity to defend as they were named parties in appellant's third-party complaint. However, both parties voluntarily moved to dismiss themselves from the case therby choosing not to participate in the defense of the case. Thus, Regal and Ohio Brass should not be given an opportunity to relitigate the issue raised and already decided in this suit.

Appellant's third assignment of error is well taken, as the trial court should not have dismissed its third-party complaint on the basis of the third-party defendants' Civ. R. 12(B)(6) motion. Consequently, this case must therefore be remanded for the limited purpose of addressing the potential liability of the third-party defendants.

In its fourth assignment of error, appellant argues that the court erred in excluding opinion testimony of two of its defense witnesses, David Tapfer and Herman Stupka. Appellant alleges that both witnesses were only testifying as to their personal observations and inferences rationally based on their perception. Since these witnesses were not testifying as experts,

appellant contends that they could give opinion testimony pursuant to Ohio Evid. R. 701.

Both witnesses were appellant's employees. Tapfer was president of the company, while Stupka was a sales engineer. Both men observed the elbow after the accident and were involved in the post-accident investigations at the scene. Appellees objected to the testimony because neither witness was identified as an expert in appellant's response to appellees' interrogatories. The trial court permitted the witnesses to relate their observations but would not allow them to give their opinion as to the significance of the physical evidence they observed.

The trial court precluded Tapfer from testifying that the single jack pad impression he observed in the pavement at the accident scene indicated that the aerial elbow had been overloaded in that direction. Nor was he permittd to testify that piston threads on the ground at the scene were evidence that the inner cylinder failed before the cylinder barrel. The trial court also excluded Tapfer's testimony that the cylinder assembly could not be cross-threaded. The court struck Stupka's testimony that the severe kink he observed in the aerial elbow could only have resulted from abnormal use.

In *Shumaker* v. *Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St. 3d 367, 370, the court held that expert testimony may be excluded as a sanction for violation of Civ. R. 26(E)(1) which provides that "a party is under a duty seasonably to supplement his response with respect to any question directly addressed to ***(b) the identity of each person expected to be called as an expert witness at trial and the subject matter on which he is expected to testify." See, also, *Huffman* v. *Hair Surgeon, Inc.* (1985), 19 Ohio St. 3d 83; *Jones* v. *Murphy* (1984), 12 Ohio St. 3d 84. An objective of this rule is to provide opposing counsel with updated and complete discovery so that counsel can competently prepare for cross-examination of the expert. *Shumaker, supra,* at 370.

In this case, appellees did submit interrogatories asking appellant to identify its expert witnesses. Appellant *never* identified Tapfer and Stupka as experts even though it identified others as experts. The testimony that appellant seeks to have admitted extends beyond the scope of lay opinion allowed by Rule 701 of the Ohio Rules of Evidence. At trial, Olmsted's counsel attempted to elicit responses as to the cause of the fractured hydraulic cylinder. This type of testimony requires an expert witness. Further, even Olmsted's trial counsel admitted that he was "in a position of having to qualify Mr. Tapfer as an expert for him to testify on certain matters." For these reasons, the trial court correctly excluded their opinions because of unfair surprise and possible prejudice to appellees. See *Huffman, supra,* at 85.

Appellant cites *Inner City Wrecking Co.* v. *Bilsky* (1977), 51 Ohio App. 2d 220, and *Martin Transportation Co. Inc.* v. *David G. Umbaugh* (Feb. 18, 1988), Cuyahoga App. No. 53407, unreported, for the proposition that there must first be a court order compelling disclosure of expert witnesses before a court may exclude opinion testimony.

These cases did not support appellant's position. In *Wrecking, supra,* there was no request for disclosure of expert witnesses, and in *Martin, supra,* the court's decision was based in part on violation of a local rule. Most importantly, in a judgment entry dated December 28, 1987, the trial court ordered Olmsted to answer Interrogatory No. 18, which requested the name of each expert witness and the subject matter of the expert's testimony. At no time prior to trial did Olmsted identify Tapfer and Stupka as experts despite the order to do so.

Appellant's fourth assignment of error is without merit.

Therefore, the judgment of the trial court is affirmed as to the first, second and fourth assignments of error, and is reversed as to the third assignment and remanded for further proceedings on appellant's third-party complaint consistent with the analysis provided in this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

FORD, P.J.,
KOEHLER, J., Twelfth Appellate
District, sitting by assignment,
Concur.

---

[1] Appellees did not appeal this ruling.

[2] Appellant has assigned all rights against Universal Hydraulics to appellees and therefore does not contest Universal's dismissal.